[Civ. No. 20065. First Dist., Div. Two. Oct. 1, 1962.]

CUPERTINO SANITARY DISTRICT OF SANTA CLARA COUNTY, Plaintiff and Appellant, v. BOARD OF SUPERVISORS OF SANTA CLARA COUNTY et al., Defendants and Respondents.

Sam J. Anderson and Robert W. Harrison for Plaintiff and Appellant,

Spencer M. Williams, County Counsel, and John R. Kennedy, Assistant County Counsel, for Defendants and Respondents.

AGEE, J.—Plaintiff Cupertino Sanitary District brought this action for declaratory relief against the Board of Supervisors of Santa Clara County, the county clerk, and the county registrar of voters. The complaint alleged that an actual controversy had arisen between the parties as to the proper interpretation of section 6489.5 of the Health and Safety Code and section 11052 of the Elections Code.[1] Plaintiff accordingly prayed for a judicial construction of these statutes and for a determination of whether defendant county or plaintiff sanitary district was required to accept filing of a certain recall petition and bear the costs of conducting the recall election.

The cause was submitted for decision upon stipulation by the parties to the following facts: That one John Ashley attempted to serve a petition calling for a recall election of each member of the board of directors of plaintiff sanitary district upon the county clerk and the county registrar of voters; that upon the advice of the county counsel, service of the petition was refused; that John Ashley then attempted to make service upon the secretary of plaintiff sanitary district; that plaintiff's board of directors passed a minute order instructing the secretary to refuse service of the petition; that by agreement of county counsel and district counsel and without prejudice to the legal rights of either party, the county registrar of voters checked the petition and reported that there were valid signatures in excess of the required 20 per cent of the votes cast in the last general election of the district. The matter was submitted upon the foregoing stipulation and the points and authorities of counsel.

The trial court found that plaintiff sanitary district was required to accept the recall petition for filing, to conduct the recall election, and to bear the cost of the election. From the judgment so declaring, plaintiff now appeals.

Reserving all legal rights and objections, the board of directors of the sanitary district, on March 1, 1961, ordered a

---

[1] It may be noted that the Elections Code has since been recodified by the Legislature, effective September 15, 1961. (Stats. 1961, ch. 23.) Former sections 11052 of the Elections Code and 4021a of the Political Code have been combined and retitled section 27202 of the Elections Code. Throughout this opinion, however, all references are to the code sections as they were numbered prior to the 1961 changes.

special election to be held on May 9, 1961. The recall was defeated two to one, and the validity of the recall election is not involved on this appeal. The only "unfinished business" in connection with this particular matter is whether the district or the county should bear the costs of the election.

The sole question raised by this appeal is whether the lower court was correct in its construction of the statutes governing the recall of appellant's directors. The key provision, section 6489.5 of the Health and Safety Code, reads as follows: "Every member of the board [of a sanitary district],[2] whether elected or appointed, may be recalled by the voters in accordance with the recall provisions of Chapter 2 of Division 13 of the Elections Code applicable to officers of counties." Chapter 2 of division 13 of the Elections Code (encompassing §§ 11050-11066), as it read at all times here relevant, set forth the procedure to be followed in the recall of county officers.[3] Pursuant to section 11051,[4] "[t]he holder of any elective office of any county or of any district,[5] who has held his office at least six months, may be recalled at any time by the voters, by following the recall procedure set forth in this chapter." Section 11052[6] sets forth the following procedure: "A petition demanding the election of a successor to the person sought to be recalled shall be filed with the county clerk. The petition shall be signed by voters equal in number to at least 20 percent of the entire vote last cast within the county for all candidates for the office which the incumbent, sought to be removed, occupies. . . ."

Section 11055[7] required the county clerk, within 10 days from the date of the filing of the petition, to ascertain whether or not the petition was signed by the requisite number of voters. Section 11057[8] provided that if the petition were

---

[2]See Health and Safety Code sections 6400 and 6401.

[3]Sections 11050-11066 of chapter 2, division 13 of the Elections Code have since been recodified as sections 27200-27216 of chapter 2, division 14 of the Elections Code. (See Stats. 1961, ch. 23.)

[4]Stats. 1953, ch. 821, p. 2135; now Elections Code section 27201.

[5]"District" as used in this section does not refer to sanitary districts but only to supervisorial and judicial districts. (See Elec. Code, § 11050; Stats. 1953, ch. 821, p. 2135, now § 27200.) Sections 11051 et seq. therefore become applicable to sanitary districts only by virtue of Health and Safety Code section 6489.5.

[6]Stats. 1953, ch. 821, p. 2135; now Elections Code section 27202.

[7]Stats. 1939, ch. 26, p. 300; now Elections Code section 27205.

[8]Stats. 1955, ch. 100, p. 566; now Elections Code section 27207.

found to be sufficient, the county clerk should then submit it to the county board of supervisors. The board was then required to order a special election for the purpose of determining whether the voters would recall the officer.

The entire controversy between appellant and respondents hinges on the wording of Health and Safety Code section 6489.5 that the directors of a sanitary district may be recalled "in accordance with" the recall provisions applicable to county officers. It is appellant's position that the reference in section 6489.5 was designed to incorporate the *literal* wording of the relevant sections of the Elections Code. Pursuant to Elections Code sections 11052, 11055, and 11057, the recall petition must therefore be filed with the county clerk and the recall election conducted and paid for by the county. Respondents, on the other hand, contend that Health and Safety Code section 6489.5 was intended to incorporate only the "mechanics" of the recall procedure applicable to county officers. Respondents therefore assert that the relevant Elections Code sections ought to be read in such a manner as to substitute "district secretary" for "county clerk" in sections 11052, 11055, and 11057, and "district board of directors" for "board of supervisors" in section 11057.

Research discloses no appellate court decision bearing upon the question raised by this appeal. In *Wallace* v. *Ansill, etc., et al.* (No. 72023, May 16, 1957), the Superior Court of Orange County was called upon to interpret the same code sections. The trial court found that section 6489.5 of the Health and Safety Code was designed to incorporate the literal wording of the applicable sections of the Elections Code. It accordingly rendered a declaratory judgment requiring the county rather than the sanitary district to "accept and process" a petition to recall three sanitary district directors.

Opposed to this view is an opinion of the Attorney General of California construing a Public Utilities Code section analogous to Health and Safety Code section 6489.5. (See 31 Ops. Cal. Atty. Gen. 207, May 20, 1958.) Section 16004 of the Public Utilities Code provides that every elective officer of a public utility district "is subject to recall by the voters of the district, pursuant to general law with reference to recall of county officers." The questions presented for consideration by the Attorney General were (1) whether such a recall proceeding was within the province of the district itself or the county board of supervisors, and (2) if the matter

were within the province of the district, whether the county clerk or the district clerk and ex officio secretary was charged with the duty of examining and certifying the recall petition. The Attorney General concluded that recall of a district officer was within the province of the district and that the duty of examining and certifying recall petitions was one to be performed by the district secretary. In so concluding, the Attorney General noted that the district board of directors, pursuant to the Public Utilities Code, was empowered to call elections to elect board members, elections to acquire public utility works, bond elections, and annexation elections. The only elections which were required to be called by the county board of supervisors were those to determine whether a public utility district should be formed, to elect its first board of directors, and to determine if it should be disincorporated. The Attorney General then stated: ''The general pattern is to place the calling of elections which are held in the due course of the administration of a public utility district within the province of the board of directors of the district, the county board of supervisors being involved only in elections concerning formation and dissolution of a district. Consistent with this general pattern, we believe that the Legislature, by incorporating the general law provisions of the Elections Code by reference in section 16004, did not intend to disturb this pattern, but merely intended to incorporate *the mechanics* of the recall procedure, leaving the responsibility for calling and administering the election with the district board of directors. . . .

''In summary, we conclude that when a recall election is to be held in a public utilities district, the provisions of the Elections Code as to recall of county officers apply with the qualification that wherever that Code reads 'board of supervisors' that it be deemed to read 'board of directors,' and wherever it reads 'county clerk' it be deemed to read 'clerk and ex-officio secretary.' '' (31 Ops. Cal. Atty. Gen., *supra,* at pp. 208-209.)

In the case at bar, the lower court chose to apply a similar construction to Health and Safety Code section 6489.5. In its memorandum decision, the court referred with approval to the above-quoted opinion of the Attorney General. The court then went on to state that public utility districts and sanitary districts were both entities which, in general, conducted their own affairs and held their own elections. It was therefore

logical to assume that the Legislature did not intend to interfere with this general pattern of holding elections but had intended merely to incorporate the mechanics of the recall procedure, leaving the responsibility for calling and administering elections within the districts to their respective boards of directors. The court also pointed out that a sanitary district, as a political entity entirely separate and apart from the county, has its own funds and its own means of financing its activities through taxes and bonds. To require the county to pay for the cost of conducting the proposed recall election would be to impose upon county taxpayers an item of expense arising from the administration of a district over which the vast majority of county taxpayers have no control and from which they receive no benefit. The court accordingly concluded that Health and Safety Code section 6489.5 was not designated to relieve appellant sanitary district from the duty of conducting its own recall elections.

 Appellant's primary argument in contending that the judgment should be reversed is that the court was without power to ignore the express wording of the applicable Elections Code sections requiring the "county clerk" and the county "board of supervisors" to administer and finance an election to recall the directors of a sanitary district. Appellant thus asserts that the lower court in effect rewrote the applicable provisions of the Elections Code and thereby substituted its own views for those of the Legislature.

Appellant, in so contending, overlooks the fact that the relevant sections of the Elections Code become applicable to sanitary districts solely by virtue of Health and Safety Code section 6489.5. In order to determine whether the Legislature intended the *literal wording* of the provisions of the Elections Code to apply to sanitary districts, it is first necessary to construe the language of section 6489.5 of the Health and Safety Code. Since that section provides only that the directors of sanitary districts may be recalled "in accordance with," instead of "as provided by," the recall provisions applicable to county officers, it is certainly open to question whether the Legislature intended to incorporate the literal wording or only the procedure therein prescribed.

The word "accordance" has been defined to mean in "agreement; harmony; concord; conformity." (See *City & County of San Francisco* v. *Boyd* (1943) 22 Cal.2d 685, 690 [140 P.2d 666].) In determining the precise meaning of the word

"accordance," as used in section 6489.5, the lower court looked to the related Health and Safety Code sections which empower a sanitary district to conduct its own elections and to levy and collect taxes for the payment of its expenses. In concluding that the Legislature did not intend to incorporate the literal wording of the pertinent provisions of the Elections Code, the court was not "rewriting" these statutes but was merely construing the broad language of section 6489.5 in such a manner as to render it consistent with other legislation delineating the powers and duties of sanitary districts.

 Appellant next asserts that the Legislature must have intended the Elections Code sections to be applied literally for the reason that the county clerk (or county registrar of voters, if there be one) is the custodian of the register of voters and thus has access to the records necessary to check the validity of a recall provision (Elec. Code, §§ 17, 19). This argument is wholly without merit. Pursuant to section 6563 of the Health and Safety Code, a sanitary district, when conducting elections, is specifically directed to consult the great register of the county. As the Attorney General aptly pointed out in his above-mentioned opinion, "the fact that the county clerk is custodian of the Great Register is immaterial in determining who shall verify signatures and certify the sufficiency of the recall petition." (31 Ops. Cal. Atty. Gen. at p. 209.)

 Appellant's next argument similarly sheds little light on the legislative intent behind the enactment of Health and Safety Code section 6489.5. Appellant asserts that the Legislature, by providing that elections to recall the officers of supervisorial and judicial districts, as well as of counties, were to be conducted and paid for by the county (Elec. Code, §§ 11050 and 11051[9]), thereby indicated that it did not intend for separate districts, such as appellant, to pay the cost of conducting recall elections out of their own funds. Appellant contends that the lower court thus erred in concluding that it was furthering the legislative purpose by construing Health and Safety Code section 6489.5 in such a manner as to shift the expense of a sanitary district recall election from the county taxpayers as a whole to the taxpayers within the district itself. Appellant overlooks the fact that supervisorial and judicial districts are not independent entities possessing

---

[9]Now sections 27200 and 27201.

separate funds with which to finance their activities. A supervisorial district serves no other purpose than to divide the county into geographic units, each of which shall elect one member to the county board of supervisors. (Gov. Code, §§ 25000, 25001, 25040.) A judicial district is similarly a geographic division of the county created for the purpose of electing judges and other officers of municipal and justice courts (Gov. Code, § 71040). Since neither district possesses any authority to conduct its own elections or to maintain its own separate funds, it would indeed be surprising had the Legislature required it to bear the cost of conducting an election to recall its officers.

A sanitary district, such as appellant, presents an entirely different situation. Since it is empowered to conduct and finance all elections arising during the due course of its administration, it would be unreasonable to assume that the Legislature intended to apply a different rule to recall elections. Furthermore, a recent enactment affirmatively indicates a legislative intent to require districts *with separate fund raising powers* to finance their own recall elections. In establishing Small Craft Harbor Districts in 1959, the Legislature provided that district directors might be recalled ''in the same manner as officers of counties'' under chapter 2 of division 13 of the Elections Code, except that the term ''county'' should mean ''district,'' the term ''board of supervisors'' should mean ''board,'' and the term ''county clerk'' should mean ''secretary.'' (Harb. & Nav. Code, §§ 7120, 7122.)

Appellant's final argument is that the Legislature could not have intended to authorize the directors of a sanitary district to conduct an election for their own recall and, in particular, to authorize the district secretary, who is also a director, to verify the signatures on a petition for his own recall. This argument is predicated upon Elections Code section 11058,[10] which requires that when the county clerk is the officer sought to be recalled, his duties shall be performed by some other person designated by the board of supervisors.

The point has merit but we believe it to be unsound. Health and Safety Code section 6489.5 incorporates by reference all of the provisions of chapter 2 of division 13 of the Elections Code. Since section 11058 is included within chapter 2, the Legislature obviously intended it to apply to elections to recall the directors of a sanitary district. Accordingly, if the

---

[10]Stats. 1939, ch. 26, p. 301; now Elections Code section 27208.

terms "secretary" and "district board of directors" are substituted for "county clerk" and "board of supervisors," it becomes apparent that the district board, pursuant to section 11058, must appoint another to perform the secretary's duties in connection with a petition seeking to recall the secretary. Appellant fails to show, however, that the decision of the lower court was in any manner contradictory to this interpretation of section 11058. The sole duty which the county clerk or district secretary is required to perform in connection with a recall petition is to ascertain whether or not the petition was signed by the requisite number of voters in accordance with section 11055. In the case at bar, the cause was submitted for decision upon the express stipulation of the parties that the county registrar of voters, by agreement of counsel, had checked the petition and reported valid signatures in excess of the required 20 per cent of the votes cast in the last general election of the district. It thus remained only for the trial court to direct appellant district to accept filing of the petition and conduct and finance the required election.

Judgment affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.

A petition for a rehearing was denied October 18, 1962, and appellant's petition for a hearing by the Supreme Court was denied November 28, 1962.