DECISION
John Yashar (plaintiff) brings this appeal of the December 16, 1994 written decision of the Coastal Resources Management Council (CRMC). The CRMC denied plaintiff's request for a modification of an Assent to construct a dock in Jamestown, Rhode Island. Jurisdiction is pursuant to G.L. 1956 §45-24-15.
FACTS
The plaintiff owns real property located at 72 Highland Avenue, Jamestown, Rhode Island. Plaintiff filed an application with the CRMC for an Assent to construct and maintain a four-foot by sixty-foot residential dock in Mackeral Cove. At a hearing on July 24, 1990, the CRMC considered and denied plaintiff's application at a hearing on July 24, 1990. The plaintiff appealed the decision to Providence Superior Court. On August 16, 1993, Mr. Justice Cresto issued a bench decision which remanded the matter to the CRMC for further findings of fact. On remand, in a written decision issued on January 11, 1994, the CRMC granted an Assent for the construction of the dock.
In April 1994, the plaintiff began preparations to construct the dock. Plaintiff's engineer discovered ledge which rendered the dock unusable in its approved location. Thereafter, plaintiff filed a request to modify the January 11, 1994 Assent. Specifically, plaintiff sought to relocate the dock 105 feet south of the approved location and to drop the lower seaward 245 feet of the dock by three feet, with steps to provide for the transition.
The CRMC conducted an advertised hearing on this modification on July 26, 1994. The Record before the CRMC at the July 26, 1994 hearing included a July 11, 1994 report of Thomas Medeiros, CRMC staff engineer, indicating plaintiff's compliance with CRMP Standard 300.4E.3.j. requiring a twenty-five foot offset of the dock from plaintiff's property line; a report of CRMC Biologist indicating no negative biological impact; May 27, 1994 report of Alicia Good, DEM Chief of Water Resources, indicating no negative impact on water quality and granting a State Water Quality Certification for plaintiff's project; and the May 9, 1994 report of Edward Sanderson of the Historical Preservation Commission indicating no adverse effect on significant historic or archaeological properties. Plaintiff's expert engineer, L. Robert Smith, testified at the hearing, and his report of April, 1994, which indicated that the dock meets all CRMP Standard 300.1 requirements, was also before the CRMC.
In an 8 to 2 vote, the CRMC denied plaintiff's request for modification.[1] In support thereof, the CRMC made the following findings of fact:
 "1. The proposed project relocation is in tidal waters off 72 Highland Drive, Plat 9, Lot 792 in the Town of Jamestown, Rhode Island.
 2. The proposed relocation of the dock is to take place in Mackeral Cove formerly designated as Type 2 low intensity boating waters by the Coastal Resources Management Council. Mackeral Cove is currently designated a Type 1 conservation area by the Coastal Resources Management Council. The water area reclassification took place on or about January 24, 1991.
 3. The applicant proposes to relocate the dock approximately 105 feet southward in order to avoid a ledge that was discovered immediately seaward of the previously approved dock site. Apparently, the ledge was not discovered until April 1994.
 4. The testimony at the hearing on July 26, 1994 revealed that in an extremely low moon tide, the ledge was discovered approximately 20 feet seaward of the coastal feature. The presence of the ledge had not been detected during previous soundings of the area.
 5. The Council staff engineer, in his report, stated that due to the extent of the modification request that the matter should be addressed by the full Council.
 6. The evidence indicated that the proposed relocated dock would be located approximately 50 feet from the southern boundary.
 7. The owner of the lot immediately to the south, Dr. Cahill, testified that the relocation of the dock approximately 100 feet closer to his property would impair his enjoyment of his property as well as render it unsafe, unsanitary and unpleasant to swim in the water area he and his family previously had utilized. Dr. Cahill also testified that, in his opinion, the dock would become a hazard in the event it was destroyed by coastal storms. Dr. Cahill also testified that with boats coming and going to the relocated dock which would be 60 feet in length and only 50 feet away from his property that his family could no longer swim in the area unless he were to erect a dock at least 60 feet in length from his property.
 8. The testimony also revealed that not only does the modification proposal entail relocation of the dock but the re-design of the dock as well. The design change consists of the seaward 24 feet of the dock being lowered approximately 3 feet with steps to be included for the transition between the higher and lower elevations.
 9. The Council finds that the modification request constitutes a substantial modification to the original approval which requires a new application to be filed by the applicant. The Council finds that it cannot grant the modification request on the grounds that the modification is not a modification but a new residential boating facility in a new area with a new design.
 10. As such, the Council finds that the applicant has not met his burdens of proof under the applicable sections of the Rhode Island Coastal Resources Management Program ("CRMP") for the grant of a modification.
 11. Based on the foregoing, there is a reasonable probability of conflict with a plan or program for the management of the State's coastal resources as well as damage to the coastal environment of the State of Rhode Island.
[CRMC Decision of December 16, 1994 at 2, 3].
The plaintiff filed this timely appeal.
STANDARD OF REVIEW
The Superior Court reviews decisions of the CRMC pursuant to G.L. 1956 § 42-35-15 (g) which provides in pertinent part:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, interferences [sic], conclusions or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or [sic] law;
 (5) Clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This section precludes a reviewing court from substituting its judgment for that of the agency with respect to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles,543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of InterestCommission, 509 A.2d 453, 458 (R.I. 1986). Court's review is limited to determining whether substantial evidence exists to support the agency's conclusions as to the application of law.Newport Shipyard v. Rhode Island Commission for Human Rights,484 A.2d 893 (R.I. 1984). "Substantial evidence" is more than a scintilla but less than a preponderance of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Caswell v. George Sherman Sand and Gravel Co., Inc.,424 A.2d 646, 647; Salve Regina College v. Zoning Board ofReview, 878 R.I. 594 [594 A.2d 878] (1991). This Court may reverse conclusions of administrative agencies when they are totally devoid of competent evidentiary support in the whole record. Milardo v.Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981).
Despite the great deference accorded to questions of fact, this court retains the power to review agency decisions to determine what the law is and its applicability to the facts.Narragansett Wire Co. v. Norberg, 376 A.2d 1, (R.I. 1977).
THE AGENCY DECISION
Plaintiff argues that CRMC's denial of his modification was arbitrary and capricious, characterized by unlawful procedure, and clearly erroneous in light of the substantial evidence in the record.
The CRMC must comply with the requirements of the Rhode Island Administrative Procedure Act (RIAPA). Ratcliffe v. CoastalResources Management Council, 584 A.2d 1107, 1111 (R.I. 1991). The APA requires administrative agencies, like the CRMC, to follow their own rules and regulations. Appeal of Gielen,652 A.2d 144, 139 N.H. 283 (N.H. 1994).
In pertinent part, RIAPA provides:
 "Any final order shall include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supported by a concise and explicit statement of the underlying facts supporting the findings."
G.L. § 42-35-12.
In considering plaintiff's proposed modification, the CRMC was bound by both its enabling legislation, G.L. § 46-23-1, and its promulgated rule governing Modifications of Assents, CRMC Management Procedure Rule 8.3. The enabling statute, far from granting broad discretion to the CRMC, specifically requires the CRMC to consider the preservation of ecological systems as the primary guiding principle upon which to judge any environmental alteration of coastal resources. G.L. § 46-23-1; See Milardov. Coastal Resources Mgmt. Council, 434 A.2d 266, 271 (R.I. 1981).
The CRMC Management Procedure Rule 8.3 governs modifications of assents and provides, in relevant part:
"Modification of Assents and Final Decisions
 At any time prior to the expiration of an assent, the full Council by majority vote may, based upon the evidence presented to it, modify an assent . . . The Council authorizes the Executive Director in his discretion to modify an assent or final decision of the Council when the requested modification is consistent with the prior approval of the Council and the applicant and staff review have clearly demonstrated . . . that the project's overall impact to the state's coastal resources will be less than or equal to the existing assent or decision."
Read together, the enabling statute and Rule 8.3 clearly limit CRMC's discretion. Specifically, it is clear that the CRMC is not free to summarily regard all modifications of prior assents as per se detrimental to the state's coastal resources. Rather, in each case, the CRMC must make an independent finding as to the impact of the proposed modification to an assent on the state's coastal resources. When considering plaintiff's proposal for modification, the CRMC did find that the proposed modification involved a change in location and a design change to the dock. However, the CRMC failed to indicate the impact of the relocation and redesign of the dock upon coastal resources, as required by its enabling statute. In fact, a review of the entire record reveals that the CRMC failed to make any finding regarding the impact of the proposed project to the state's coastal resources. This failure of the CRMC to include a required finding of fact in its decision to deny plaintiff's proposed modification renders that decision procedurally unlawful and arbitrary and capricious.
A careful review of the certified record reveals that it is devoid of any evidence that the impact of the plaintiff's proposed modification upon the state's coastal resources would be greater than the impact of the existing assent. To the contrary, substantial and competent evidence is found in the record to support the finding that the proposed modification of the dock has the same or less impact on the state's coastal resources as does the original assent. For example, CRMC engineer, Thomas Medeiros, reported on July 11, 1994, that plaintiff's modification request complied with CRMP Standard 300.4.E.3.j as the proposed dock is over twenty-five feet away from plaintiff's property line. The CRMC Biologist report indicated no negative biological impact as a result of the dock. Alicia Good, DEM Chief of Water Resources, indicated on May 27, 1994, that plaintiff's proposal had no negative impact on water quality and issued a State Water Quality Certification. A May 9, 1994 report from Edward Sanderson of the Historical Preservation Commission indicated that plaintiff's project had no adverse effect on significant historic or archaeological properties. An April, 1994 report from plaintiff's engineer, Waterman Engineering, indicated that the dock met all CRMC Standard requirements. Finally, at the hearing, CRMC board members also noted the proposed modification's compliance with all of the CRMC requirements for Type 2 low-intensity use waters. In light of the uncontroverted evidence indicating the compliance of the plaintiff's proposed modification with all CRMP requirements, and a lack of any competent evidence in the record to indicate any detriment to the state's coastal resources from plaintiff's proposed modification, this court finds that the CRMC's decision to deny plaintiff's request is clearly erroneous. This court is mindful that a decision by the CRMC that lacks supportive findings of fact and overlooks or ignores much evidence, entitles an applicant to the final adjudication of the petition of an appeal and warrants a reversal rather than a remand. Sakonnet Rogers v. CoastalResources Mgt., 536 A.2d 893 (R.I. 1988).
After a review of the entire record, this court finds that CRMC's denial of this plaintiff's proposed modification is arbitrary and capricious and characterized by unlawful procedures. This court also finds that this CRMC decision is clearly erroneous in light of the substantial and competent evidence on the record, and further, that the decision prejudiced substantial rights of the plaintiff. This court does not reach plaintiff's other issues.
Accordingly, the plaintiff's appeal is sustained, and the decision of the CRMC is reversed.
Counsel is directed to submit the appropriate order for entry.
[1] CRMC board members determined that plaintiff's modification request was governed by the CRMC standards for Type 2 waters in effect at the time of plaintiff's original application. CRMC permits docks in Type 2 waters. If plaintiff's modifications were denied, plaintiff would have to file a new application which would be governed by CRMC standards for a Type 1 water. The CRMC strictly prohibits docks in Type 1 waters.